UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

PERRY JACKSON,

                 Petitioner,             Case Number:  02-10260-BC
                                                Honorable David M. Lawson

v.

DENNIS STRAUB,

                 Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

The petitioner, Perry Jackson, presently confined at the Earnest C. Brooks Correctional Facility in Muskegon Heights, Michigan, has filed a *pro se* application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  In 1995, he pleaded guilty to second-degree murder, Mich. Comp. Laws 750.317, and received a life sentence.  The petitioner challenges his conviction on the grounds that he has newly discovered evidence that would yield a lower score on a sentencing guidelines variable; the prosecution violated the plea agreement by amending its sentencing recommendation to support a higher sentence; the sentencing court erred in scoring a guidelines variable; the sentencing court improperly departed from the sentencing guidelines, issuing him a grossly disproportionate sentence; and his trial counsel was ineffective by failing to investigate the petitioner's case, failing to assert defenses, failing to object when the sentencing recommendation changed, and failing to present evidence to show support for certain scoring of a sentencing guideline.  The respondent contends that some of the petitioner's claims are procedurally defaulted and the rest are without merit.  The Court will deny the petition because the claims lack merit.

I.

The petitioner pleaded guilty to one count of second-degree murder on June 20, 1995 in the Berrien County, Michigan circuit court, for the shooting death of Shinnara Bailey.  In exchange for the petitioner's guilty plea, the prosecutor dropped charges of open murder, possession of a firearm during the commission of a felony, and unlawfully carrying a concealed weapon, and dismissed charges arising from a separate incident that included assault with a dangerous weapon, unlawfully carrying a concealed weapon, and possession of a firearm during the commission of a felony.  On September 8, 1995, the petitioner was sentenced to serve life in prison, although presumably he will be eligible to be released on parole.  *See* Mich. Comp. Laws § 791.234(6).

The petitioner appealed to the Michigan Court of Appeals, raising two issues:

I.      Is the defendant entitled to resentencing where the court failed to articulate sufficient and compelling reasons for its substantial departure from the guidelines' recommendation, and where the life sentence imposed is disproportionate to the offense and the offender?

II.     Did the trial court abuse its discretion in scoring twenty-five points, rather than ten for "Offense Variable-3," since the homicide occurred in a combative situation?

The Michigan Court of Appeals affirmed the petitioner's sentence.  *People v. Jackson*, No. 192120 (Mich. Ct. App. Apr. 4, 1997).  The Michigan Supreme Court denied the petitioner's delayed application for leave to appeal on March 31, 1998.  *People v. Jackson*, 456 Mich. 953, 577 N.W.2d 687 (1998).

The petitioner next filed a motion for relief from judgment in the trial court on March 1, 1999, raising several more issues:

I.      Defendant was deprived of his rights to due process and to equal protection of the law . . .  where his plea to second-degree murder was illusory because 1) Defendant plead guilty in part based upon the fact that the recommended

-2-

guideline sentence would be 10 to 25 years; whereat [sic] on the day of sentencing the prosecution was allowed to amend its recommendation on the sentence and recommended life imprisonment; 3) where the trial court abused its discretion and committed error in allowing the recommendation on the sentence to be amended on the day of sentencing without first giving Defendant an opportunity to withdraw his plea.

II.     Defendant was deprived of his rights to due process and to equal protection of the law . . . where the prosecution failed to keep its agreement on the recommended sentence, thus denying Defendant specific performance, where the recommended sentence was 10 to 25 years, but was later changed to a life sentence.  Defendant is entitled to specific performance or he should be allowed to withdraw his plea.

III.    Defendant was deprived of his rights to due process and to equal protection of the law . . . , to the effective assistance of counsel before and during the plea and sentence; where trial counsel failed to 1) properly investigate the case, 2) failed to investigate the legal issues in the case, 3) failed to assert available and viable defenses on defendant's behalf, 4) trial counsel failed to object and move that defendant be allowed to withdraw his plea where the sentence recommendation was changed from 10 to 25 years to life imprisonment and 5) where trial counsel failed to produce evidence at the sentencing to support his argument that there was indeed a combative situation which would have lowered Defendant's score in the PSIR.

IV.     Defendant was deprived of his rights to due process and to equal protection of the law . . . where he was subjected to cruel and unusual punishment, where the trial court departed from the guidelines at his sentencing; where the court failed to give adequate reasons for its substantial departure, thus giving defendant a life sentence where the sentence was disproportionate to the offense and the offender.

V.      Defendant was deprived of his rights to due process and to equal protection of the law . . . where the trial court abused its discretion in scoring the offense variable at 3, where the killing occurred in a combative situation. Thus, Defendant is entitled to be resentenced where he has evidence which would conclusively show that there was indeed a combative situation.

VI.     Defendant would be deprived of his rights to due process and to equal protection of the law . . . should the trial court deny Defendant a remand for resentencing or for a remand for an evidentiary hearing, where there is newly discovered evidence which would show and support the fact that Defendant was in a combative situation during the time of the altercation between him and the deceased and where such evidence would change Defendant's

-3-

sentence and give the court a different perspective of the Defendant and the entire sentencing phase; where the court was not privy to all of the facts and circumstances surrounding the combative situation, thus relying upon inaccurate information in the PSIR.

The trial court denied the petitioner's motion for relief from judgment on June 2, 1999.  The Michigan Court of Appeals denied him leave to appeal for failing "to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Jackson*, No. 220359 (Mich. Ct. App. June 8, 2000). The Michigan Supreme Court denied leave to appeal using similar language. *People v. Jackson*, 463 Mich. 905, 618 N.W.2d 912 (2000).

In January of 2001, the petitioner filed a motion for a new trial and evidentiary hearing in the trial court.  He raised two claims:

I.      Under the Fifth and Fourteenth Amendments to the U.S. Constitution, this trial court must grant Defendant's motion for a new trial based on newly discovered evidence where justice has not been done, or at a minimum grant him a remand for an evidentiary hearing in this matter, where the evidence presented is such that it would render a different result probable on retrial; where the evidence itself is newly discovered; where the evidence is not merely cumulative to other evidence; and where Defendant could not with reasonable diligence have discovered and produced the evidence prior to or during trial or the proceedings; remand is warranted.

II.     Under the Fifth and Fourteenth Amendments to the United States Constitution, Defendant is entitled to a remand to expand the record, MCR 6.507(A) and to resentencing where 1) there has been newly discovered evidence which undeniably affirms Defendant's contention that there was in fact a combative situation between him and the deceased, Shinnara Bailey, 2) where this court erroneously scored OV 3 at 25 points for a noncombative situation, where the new evidence and admission by Leonard Welburn shows there was in fact a combative situation, Defendant can only be scored 10 points, Defendant must be resentenced; 3) where there has been a retroactive change in the law affecting Defendant's sentence, he should be resentenced; and 4) where the court erroneously sentenced Defendant to "natural life" imprisonment, he must be resentenced.

-4-

The trial court denied the motion and the Michigan Court of Appeals dismissed the petitioner's delayed application for leave to appeal for lack of jurisdiction "because this appeal constitutes an appeal of a denial of a successive motion for relief from judgment." *People v. Jackson*, No. 237381 (Mich. Ct. App. Dec. 21, 2001). The Michigan Supreme Court also denied the petitioner leave to appeal. *People v. Jackson*, 467 Mich. 855, 649 N.W.2d 79 (2002).

The petitioner filed the instant petition for writ of habeas corpus on October 8, 2002. The petition and supporting brief raise the following issues:

I.      Petitioner was deprived of his constitutional right to due process and to equal protection of the law under Mich. Const. 1963, Art. 1, §17, §20; United States Constitution Ams. V, XIV, where the trial court abused its discretion and committed error in denying his motion for relief from judgment and remand for evidentiary hearing, where there was newly discovered evidence which supported Petitioner's contentions of a combative situation and would have negated OV 3 offense variable, and where the evidence was not merely cumulative to other evidence.

II.     Petitioner was deprived of [his] constitutional right to due [process] and to equal protection of the law under Mich. Const. 1963, Art. 1, §17, §20; United States Constitution Amendment XIV, where the prosecution failed to keep its agreement on the recommended sentence, thus denying petitioner specific performance, where the recommended sentence was 20 to 25 years, but was later changed to a life sentence based upon an amended recommendation by the prosecutor; petitioner is entitled to specific performance or should be allowed to withdraw his plea.

III.    Petitioner was deprived of his constitutional right to due process and equal protection of the law under Mich. Const. 1963, Art. 1, §17, § 20; United States Constitution Ams. V, XIV, where the trial court abused its discretion and committed error in scoring the offense variable at 3, where the killing occurred in a combative situation; where petitioner presented evidence which conclusively showed there was a combative situation, petitioner was entitled to be resentenced.

IV.     Petitioner was deprived of his constitutional right to due process and equal protection of the law under Mich. Const. 1963, Art. 1, §17, § 20; United States Constitution Ams. VIII, XIV, where he was subjected to cruel and unusual punishment, where the trial court abused its discretion and committed error when it departed from the guidelines at his sentencing; where the court failed to give adequate reasons for its substantial departure giving petitioner a life sentence.

-5-

V.    Petitioner was deprived of his constitutional right to due process and equal protection of the law under Mich. Const. 1963, Art. 1, §17, § 20; United States Constitution Ams. V, XIV, where he was deprived of the effective assistance of counsel before and during the plea and at sentencing; where trial counsel failed to 1) properly investigate the case; 2) failed to properly investigate the legal issues in the case; 3) failed to assert available and viable defenses on petitioner's behalf; 4) counsel failed to object and move that petitioner be allowed to withdraw his plea, where the sentence recommendation was changed from 10 to 25 years, and was amended at sentencing to a life sentence; 5) where counsel failed to produce evidence before and during the sentencing to support his argument that there was indeed a combative situation which would have lowered petitioner's PSIR scoring.

The respondent asserts that the petitioner's claims II, IV, and V are procedurally defaulted and claims I and III are without merit.

II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), govern this case because the petition was filed after the Act's effective date.  *See Lindh v. Murphy*, 521 U.S. 320, 322 (1997).  The Act "circumscribe[d]" the standard of review federal courts must apply when considering applications for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel.  *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).

As amended, 28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases: An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000); internal quotes omitted). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision

-7-

unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court

defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask
> whether the state court's application of clearly established federal law was
> objectively unreasonable. . . .
>
> [A]n *unreasonable* application of federal law is different from an *incorrect*
> application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application"
> clause, then, a federal habeas court may not issue the writ simply because that court
> concludes in its independent judgment that the relevant state-court decision applied
> clearly established federal law erroneously or incorrectly. Rather, that application
> must also be unreasonable.

*Id.* at 409, 410-11. *See also King v. Bobby*, 433 F.3d 483, 489 (6th Cir. 2006); *Harbison v. Bell*, 408

F.3d 823, 828-29 (6th Cir. 2005); *McAdoo v. Elo*, 365 F.3d 487, 493 (6th Cir. 2004); *Rockwell v.*

*Yukins*, 341 F.3d 507, 512 (6th Cir. 2003) (en banc).

## A.

The petitioner's first ground for relief, like his second and fifth grounds for relief, was first

raised in the petitioner's motion for relief from judgment and in his motion for a new trial and

evidentiary hearing, the later of which was interpreted as a second motion for relief from judgment.

It appears that these claims may be procedurally defaulted, but the Court need not consider the

procedural default question because ultimately the claims are without merit. *Lambrix v. Singletary*,

520 U.S. 518, 525 (1997).

The petitioner asserts that he was deprived of due process when the trial court denied his

motion for relief from judgment offering new evidence supporting a lower calculation of offense

variable 3 under the state sentencing guideline regime. The petitioner argues that he should have

been given 10 rather than 25 points for offense variable 3 in the sentencing guidelines because he

shot the victim in a "combative situation." During the guilty plea hearing, the petitioner

-8-

acknowledged that he shot the victim three times.  When the court asked the petitioner why he shot the victim, the petitioner stated, "Because I was sensitive to the fact that I thought really - I really hit him and just made a mistake."  Rearraignment Tr. at 13.  At sentencing, the petitioner's counsel objected to the scoring of offense variable 3, asserting that the petitioner and the victim had been posturing and arguing about respect, which constituted a combative situation even though no blows were exchanged.  The court denied the petitioner's request for modification of offense variable 3, noting that testimony at the preliminary hearing established that the petitioner exited a nightclub and approached the victim, the two exchanged words but did not engage in a loud argument, the victim turned to walk away from the petitioner, and the petitioner shot the victim once in the face, then twice in the legs when he fell to the ground.  The court noted that another witness who spoke to the petitioner in the nightclub testified at the preliminary examination that the petitioner told him that he "wanted someone to act crazy with him" before he went outside.  Sentencing Tr., 9/8/1995, at 12.  The court concluded that the shooting did not occur in a combative situation because there was no physical altercation between the parties before the petitioner shot the victim.

The sentencing guidelines yielded a minimum sentence range of 120 to 300 months.  The prosecutor recommended that the petitioner receive the maximum sentence of life.  Defense counsel asked the court to consider as mitigating factors the petitioner's young age and the fact that he had been shot within the previous year.  He argued that the petitioner saw something shiny in the victim's hand; he thought it was a weapon, but it was a beer can.  The court sentenced the petitioner to prison for the rest of his natural life, noting that the facts of the case offered very little mitigation of the crime.

The petitioner's "new evidence" consists of two affidavits by people claiming to have witnessed the shooting. One of them, Brian Edward Martel McKinney, states that McKinney "observed Shinnara [the victim] quickly turn his back to Perry like he was going to draw a weapon from his waist band and observed Perry, in response to that quick motion and drawing-like action, pull a revolver from his waist band and fire one shot directly into Shinnara's head." Petition Appendix, McKinney Affidavit at ¶ 7. McKinney also states that after the shooting he "observed 'Little Leonard' a/k/a Leonard Wilburn approach Shinnara, reach down and remove a black hand gun from Shinnara's waist." *Id.* at ¶ 8. McKinney explains that he did not come forward with this information earlier because the petitioner and the victim were members of rival gangs and McKinney feared reprisals from the gangs. His affidavit was signed August 10, 1998.

The second affidavit, from Leonard Wilburn, was signed on September 20, 2000. In it, Wilburn states that he

> observed Perry Jackson after the dice game come from the far southside of the building and come to the east side where he spoke to another guy of whom he called Al who was coming from the opposite side of the building. Whereas, he (Perry) said something to the effect of "what's up folks." At that time, Shinnara, who was in the immediate area responded, as though he felt that Perry was talking to him, by stating something to the effect of "nigga, I ain't your folks." Perry that [sic] responded, by stating something to the effect that * * * [sic] dig man, can't you see that that's what people or everybody else want to see, is for us to fight." Shinnara then turned and responded and grabbed at his waist, by stating * * * [sic] "Nigga" it ain't gonna be no danm [sic] fight."

> I than [sic] saw Shinnara, who had his back slightly turned to Perry, turn as if he was going to draw his gun from his waist, and then I saw Perry in response, make a fast motion like he was responding to Shinnara's action, where Perry beat Shinnara to the punch by pulling his gun from his waist first and fired 3 quick shots as [sic] Shinnara, in which the first shot apparently struck him (Shinnara) in the head; and then there was 2 more shots fired rapidly which is when he fell. Whereas, it was in plain view that the bullet fired by Perry struck him (Shinnara) in the head.

-10-

Petition Appendix, Wilburn Affidavit at ¶¶ 4-5.  Wilburn further states that he "then went over to

Shinnara and took the pistol from his waist and went to the parking lot and through [sic] it across

the street behind a house." *Id*. at ¶ 7.  Wilburn states that he did not give the police this information

because he knew the victim belonged to a gang and he was afraid for himself and his family.

The petitioner believes that these affidavits support his assertion that the shooting occurred

in a "combative situation," supporting a lower score on offense variable 3.   In ruling on the

petitioner's motion for relief from judgment, the trial court explained:

> The Defendant states that the Court should remand this case for an evidentiary
> hearing based upon newly discovered evidence.  The evidence Defendant is referring
> to is a witness, Brian Edward Martel McKinney.  Mr. McKinney was not a part of
> the original case for or against the Defendant.  Mr. McKinney has submitted his
> affidavit to the Court concerning what he allegedly saw take place between the
> Victim and the Defendant.[] This "new" evidence suggests that the altercation
> between the Defendant and his victim may have been combative.  The Court finds
> that this assertion is not "new" evidence as defined by the law.  New evidence "is not
> merely cumulative in nature and . . . is such as to render a different result probable
> on retrial."  *People v. McAllister*, 16 Mich. 217 (1969).  This evidence, even taken
> in a light most favorable to the Defendant is merely cumulative to evidence already
> presented to the Court.

*People v. Jackson*, No. 94-4219-FC-F (Berrien County Ct. June 2, 1999).  In its ruling on the

petitioner's motion for new trial and evidentiary hearing, the trial court considered Wilburn's

affidavit:

> Based on a review of this new assertion, the Court finds that this is cumulative in
> nature and is not "new" evidence, and the Court adopts the same rationale here as it
> did in holding that Brian Edward Martel McKinney's affidavit was not
> "new"evidence (see the June 2. 1999 Opinion and Order Denying Defendant's First
> Motion for Relief from Judgment).

*People v. Jackson*, No. 94-4219-FC-F (Berrien County Ct. June 27, 2001).  The court held that even

if it considered the Wilburn affidavit in the light most favorable to the defendant, the evidence would

not render a different result probable on retrial.

-11-

To the extent that the petitioner argues that the scoring of his state sentencing guidelines violated his constitutional rights, the petitioner's claim does not entitle him to habeas corpus relief. It is well-established that "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)).  The petitioner's argument that the state court erred in scoring his sentencing guidelines is based solely on state law.  Consequently, this claim is not cognizable on federal habeas corpus review. Furthermore, since the trial court departed from the guidelines in issuing the petitioner's sentence, giving the petitioner the maximum sentence under the statute, it is not clear that an error in scoring the guidelines would render the petitioner's sentence invalid even under state law.  Because the petitioner had the opportunity to challenge the scoring of the sentencing guidelines, he has not shown that the sentencing proceedings deprived him of the fundamental elements of fairness required by the Due Process Clause.

To the extent that the petitioner argues that these affidavits constitute new evidence of actual innocence, the petitioner appears to be without a remedy.  Certainly as a matter of fact, these affidavits establish no such thing.  They merely confirm that the petitioner sought out the victim, engaged in a provocative dialogue, and then pre-emptively shot him.  Moreover, "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993).  The petitioner pleaded guilty to this offense, acknowledging that in pleading guilty he was giving up his right to be tried for this crime.  The petitioner has not alleged or shown that his plea was not voluntary, intelligent, and knowing.  The petitioner's grounds for relief are without merit.

-12-

B.

As previously noted, the petitioner's second and fifth claims appear to be procedurally defaulted because they were first raised in the petitioner's motion for relief from judgment, and cause and prejudice were not shown.  His second claim is that the prosecutor failed to comply with the plea agreement with regard to the sentencing recommendation.  The fifth claim is that trial counsel was ineffective for failing to investigate the case, failing to assert defenses on the petitioner's behalf, failing to object when the sentencing recommendation was changed, and failing to produce evidence to support the argument that the shooting occurred in a combative situation. The doctrine of procedural default provides:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson,* 501 U.S. 722, 750 (1991).  Application of the cause-and-prejudice test may be excused if a petitioner "presents an extraordinary case whereby a constitutional violation resulted in the conviction of one who is actually innocent."  *Rust v. Zent,* 17 F.3d 155, 162 (6th Cir. 1994); *see Murray v. Carrier*, 477 U.S. 478, 496 (1986).

For the doctrine of procedural default to apply, a firmly established state-procedural rule applicable to the petitioner's claim must exist, and the petitioner must have failed to comply with that state procedural rule.  *Williams v. Coyle*, 260 F.3d 684, 693 (6th Cir. 2001); *see also Warner v. United States*, 975 F.2d 1207, 1213-14 (6th Cir. 1992).  Additionally, the last state court from which the petitioner sought review must have invoked the state-procedural rule as a basis for its decision to reject review of the petitioner's federal claim.  *Coleman*, 501 U.S. at 729-30.  Finally,

-13-

the procedural default must rest on an "adequate and independent" state ground.  *Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005).  Whether the independent state ground is adequate to support the judgment is itself a federal question.  *Lee v. Kemna*, 534 U.S. 362, 375 (2002).

In this case, it appears that a state procedural rule was in place during the relevant time, namely that a Michigan court may not grant relief upon a motion for relief from judgment if the grounds for relief in the motion could have been raised on appeal from the conviction or in a prior motion.  *See* Mich. Ct. R. 6.508(D).  The Sixth Circuit Court of Appeals has held that Rule 6.508(D) is an independent and adequate ground for procedural default.  *Howard*, 405 F.3d at 477; *Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000).  It also appears that the petitioner failed to comply with this state procedural rule because claims II and V were not presented on direct appeal.

The Michigan courts actually enforced the procedural rule in this case.  The trial court explicitly rejected these claims because the petitioner failed to raise them on appeal.  The Sixth Circuit has interpreted a form order denying a motion for relief from judgment, such as those issued by the Michigan Court of Appeals and the Michigan Supreme Court in this case, as an "explained" state court judgment denying the motion for relief from judgment on a procedural ground.  *See Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004); *Luberda v. Trippett*, 211 F.3d 1004, 1006 (6th Cir. 2000).

The Court may only consider these claims if the petitioner can show cause and prejudice or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.  The petitioner has not offered any cause for his failure to advance these claims on direct appeal.  Furthermore, the claims appear to lack merit.

-14-

Contrary to the petitioner's assertion that the prosecutor failed to comply with the plea agreement when she changed her sentence recommendation, the plea transcript shows that the petitioner plead guilty in exchange for the dismissal of a number of other charges against him, including open murder. No one in the plea proceedings indicated that a recommended sentence was part of the plea agreement, and when the judge asked the petitioner if he was given any additional promises to induce him to plead guilty, the petitioner answered "No." Rearraignment Tr. at 10.

The petitioner's assertions of ineffective assistance of counsel also fail. The petitioner contends that trial counsel knew that McKinney had witnessed the shooting at the time that he encouraged the petitioner to plead guilty and essentially withheld from the petitioner and the trial court the exculpatory information McKinney offers in his affidavit. However, McKinney's affidavit is dated August 10, 1998, three years after the petitioner entered his guilty plea. In the affidavit, McKinney states that he "did not come forward with this information prior to this time for the reason that at the time I was only 21 years of age and feared reprisal from the various gangs that were involved." Petition Appendix, McKinney Affidavit at ¶ 10. The petitioner has not shown that further investigation before his guilty plea would have yielded this information.

The petitioner alleges that he informed his counsel that the shooting was in self-defense, but counsel refused to pursue that defense and encouraged him to plead guilty. He alleges that counsel visited him only three times and never discussed any potential defenses or legal issues concerning the case with the petitioner. However, at the plea proceedings, the court asked the petitioner whether he was satisfied with the work and representation that his attorney had provided for him, and the petitioner answered, "Yes, sir." Rearraignment Tr. at 6. The petitioner claims that counsel was ineffective for failing to present relevant information that would have shown that the shooting

-15-

occurred in a combative situation.  However, at sentencing, counsel argued to the court that there was a combative situation, and the court rejected the argument because no blows had been thrown. The petitioner has not established that the eyewitness accounts were available to counsel since the affidavits state that the witnesses had not come forward previously because they feared reprisals.

In addition, the petitioner states that counsel failed to disclose this information because the court "possibly would not have accepted Petitioner's plea, which was almost the case when Petitioner told the court on a prior occasion that he shot the deceased in self-defense and the court would not accept the plea."  Petition at 21.  The Court does not have a transcript in the Rule 5 materials of a proceeding in which the petitioner claimed that the shooting was in self-defense and the trial court declined to accept the plea.  However, this allegation, if true, shows that the petitioner knew he had the option to go to trial on a theory of self-defense, knew that he had to give up his claim of self-defense to plead guilty to second-degree murder, and accepted the benefits of the plea agreement in the form of the dismissal of the several other charges against him.

Finally, because the sentencing recommendation was not part of the plea agreement, counsel was not ineffective for failing to object when the prosecutor changed her recommendation.  Contrary to the petitioner's assertions, the prosecutor did not mention any sentencing agreement in her recitation of the terms of the plea agreement.  Furthermore, trial counsel stated in a letter to the petitioner dated June 10, 1999 that in his recollection, the prosecutor refused to make a sentencing recommendation part of the plea agreement.  Counsel adequately countered the prosecutor's sentencing recommendation in his remarks to the court regarding mitigating factors and therefore did not render ineffective assistance.

C.

-16-

The petitioner's third ground for relief, that the trial court erred in scoring offense variable 3 of the state sentencing guidelines, as noted in Part A, is not cognizable on habeas review. Although the petitioner had a constitutional right not to be sentenced on "misinformation of constitutional magnitude," *Roberts v. United States*, 445 U.S. 552, 556 (1980) (quoting *United States v. Tucker*, 404 U.S. 443, 447 (1972)), the essence of his argument is that the trial court mis-scored the state sentencing guidelines by failing to find that the petitioner shot the victim in a "combative situation." "A federal court may not issue the writ on the basis of a perceived error of state law," *Pulley v. Harris*, 465 U.S. 37, 41 (1984), and a claim that the trial court mis-scored offense variables in determining the state sentencing guidelines is not cognizable on habeas corpus review. *See Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999).

Moreover, the petitioner had an opportunity to challenge the guidelines scoring at the sentence hearing. He has not shown that the trial court relied on "extensively and materially false" information that he had no opportunity to correct. *Townsend v. Burke*, 334 U.S. 736, 741 (1948). Although the petitioner claims that the information relied upon by the court was inaccurate because the new affidavits indicate that the victim had a gun, the eyewitness accounts are evidence that would have to be weighed with evidence indicating that the victim was simply trying to walk away from the petitioner when he was shot. At worst, the evidence upon which the trial court relied in sentencing was incomplete, and it appears that any additional evidence was unavailable at the time of sentencing. The trial court's determination of the facts was reasonable in light of the evidence that the petitioner had told a witness that he "wanted someone to act crazy with him" and approached the victim. 28 U.S.C. § 2254(d)(2). In addition, the sentence is within the statutory penalty for second-degree murder in Michigan: life or any term of years. Mich. Comp. Laws

-17-

§ 750.317.  Accordingly, no deprivation of due process occurred, and the petitioner is not entitled to habeas relief on the basis of his third claim.

D.

The petitioner's fourth ground for relief – that his sentence violates the Eighth Amendment – although it may be procedurally defaulted, is also without merit.  The respondent claims that the petitioner failed to raise this claim at all in the state courts, although the petitioner describes advancing a very similar claim in his motion for relief from judgement.  The Court notes that the petitioner also asserted a claim that his sentence was disproportionate on direct appeal.  The Court normally would look to the petitioner's state court briefs to determine whether the petitioner advanced this argument in constitutional terms on direct appeal.  However, those briefs are not available because the respondent has failed to file them with the Rule 5 materials.  In any event, the Court finds that the petitioner's Eighth Amendment claim is without merit.

A habeas petitioner who seeks to challenge the severity of a prison sentence on Eighth Amendment grounds faces a formidable challenge.  Generally, he may obtain relief only by demonstrating that a state court decision contravened or misapplied "clearly established" Supreme Court precedent.  However, the Supreme Court has acknowledged "that our precedents in this area have not been a model of clarity."  *Lockyer v. Andrade*, 538 U.S. 63, 72 (2003).  "Indeed, in determining whether a particular sentence for a term of years can violate the Eighth Amendment, we have not established a clear or consistent path for courts to follow."  *Ibid.*  Thus, the Supreme Court declared that the general applicability of the proportionality standard to term-of-years sentences was clearly established, but confessed a lack of clarity as to the factors lower courts should consider in making that determination.  *Ibid.*  The Court concluded that "the only relevant

-18-

clearly established law amenable to the 'contrary to' or 'unreasonable application of' framework is the gross disproportionality principle, the precise contours of which are unclear, applicable only in the 'exceedingly rare' and 'extreme' case." *Id*. at 73.

In *Lockyer*, the Supreme Court reversed the Ninth Circuit's grant of a writ of habeas corpus on the ground that two twenty-five-years-to-life sentences imposed under California's "three strikes" law, where the triggering felony was the theft of $150 worth of video tapes, violated the Cruel and Unusual Punishment Clause of the Eighth Amendment. The Court noted that the "thicket" created by its jurisprudence consisted primarily of its decisions in *Solem v. Helm*, 463 U.S. 277 (1983), *Harmelin v. Michigan*, 501 U.S. 957 (1991), and *Rummel v. Estelle*, 445 U.S. 263 (1980). The California state court observed that the proportionality rule set forth in *Solem* was cast into doubt by *Harmelin* and proceeded to analyze Andrade's sentence under the approach taken in *Rummel*, where the Supreme Court rejected a claim that a life sentence imposed under Texas' recidivist statute was grossly disproportionate to the theft felonies that formed the predicate for the sentence. The California court concluded that Andrade's sentence was not disproportionate. The Supreme Court held that this decision was not contrary to or an objectively unreasonable application of federal law that was clearly established by the Supreme Court. *Lockyer*, 538 U.S. at 72-77.

In this case, however, the state court did not issue a reasoned opinion on this claim, so the heightened standard of review does not apply. Where a state court declines to address the merits of a properly raised issue, this Court conducts an independent review of the issue. *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000). The deferential standard of review prescribed by the AEDPA does not apply because "[t]his statute by its own terms is applicable only to habeas claims that were adjudicated on the merits in State court. . . . Where, as here, the state court did not assess the merits

of a claim properly raised in a habeas petition . . . questions of law and mixed questions of law and fact [are reviewed] *de novo*." *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003). This Court's review of the issues raised by the petitioner is "not circumscribed by a state court conclusion" because none of the state courts issued a reasoned opinion on these issues. *Wiggins v. Smith*, 539 U.S. 510 (2003); *see also Maldonado v. Wilson*, 416 F.3d 470, 476 (6th Cir. 2005). Nevertheless, the petitioner has failed to show that his prison sentence violates the Eighth Amendment.

A plurality of the Supreme Court has held that the Eighth Amendment does not require strict proportionality between the crime and sentence. *See Harmelin*, 501 U.S. at 965. As the Supreme Court observed in *Lockyer*, it is generally recognized after *Harmelin* that the Cruel and Unusual Punishment Clause of the Eighth Amendment forbids only an extreme disparity between crime and sentence, that is, sentences that are "grossly disproportionate" to the crime. *Id*. at 1001 (Kennedy, J., concurring); *Coleman v. Mitchell*, 268 F.3d 417, 453 (6th Cir. 2001) (citing *Coker v. Georgia*, 433 U.S. 584, 592 (1977)); *United States v. Hopper*, 941 F.2d 419, 422 (6th Cir. 1991).

"Outside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare." *Rummel*, 445 U.S. at 272. Rummel was convicted of obtaining $120.75 by false pretenses, a crime punishable by at least two years but not more than ten years in prison. He was sentenced as a recidivist to life imprisonment with the possibility of parole. His two prior felonies consisted of fraudulent use of a credit card to obtain $80 worth of goods and services, a felony punishable by two to ten years in prison; and passing a forged check for $28.36, a crime punishable by two to five years in prison. The Supreme Court held that Rummel's life sentence under the state recidivist statute did not constitute cruel and unusual

-20-

punishment.  In *Harmelin*, the Supreme Court upheld a life sentence without the possibility of parole for possession of more than 650 grams of cocaine for an offender with no prior felony convictions.

The Supreme Court overturned a life sentence in *Solem* on the ground that it was significantly disproportionate to Helm's crime and therefore prohibited by the Eighth Amendment. However, Helm had been sentenced to life imprisonment without the possibility of parole for uttering a "no account" check for $100, and his prior felonies also were minor, nonviolent crimes. By contrast, the Supreme Court reaffirmed *Rummel* and found constitutional a sentence of twenty-five years to life imposed upon a fifth felony conviction.  *See Ewing v. California*, 538 U.S. 11, 24-31 (2003).

In this case, the Court does not believe that the petitioner's sentence of life in prison for second-degree murder violated the Eighth Amendment.  The sentencing court called the crime "senseless," concluded that there were few mitigating factors with regard to the shooting, and gave deterrence and protection of the community as reasons for the sentence.  The sentencing court's justification for the lengthy prison term was rational in light of the record in this case.

Michigan law allowed a prison term of life or any number of years for this offense.  Mich. Comp. Laws §750.317.  The challenged sentence fell within the maximum sentence set by state law, and "a sentence within the statutory maximum set by statute generally does not constitute 'cruel and unusual punishment.'" *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995) (citation omitted) (quoted with approval in *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000)).  "As long as the sentence remains within the statutory limits, trial courts have historically been given wide discretion in determining 'the type and extent of punishment for convicted defendants.'" *Austin*, 213 F.3d at 301 (quoting *Williams*, 337 U.S. at 245).  There is no Eighth Amendment violation in this case.

III.

The state court decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts. The petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for writ of habeas corpus is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: August 29, 2006

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 29, 2006.

s/Tracy A. Jacobs
TRACY A. JACOBS